IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WILLIAM J. WEBB, JR., | : |
| Plaintiff, | : |
| v. | : Civil Action No. 20-938-RGA |
| WARDEN ROBERT MAY, et al., | : |
| Defendants. | : |

William J. Webb, Jr., James T. Vaughn Correctional Center, Smyrna, Delaware.
Pro Se Plaintiff.

**MEMORANDUM OPINION**

January 8, 2021
Wilmington, Delaware

/s/ Richard G. Andrews
**ANDREWS, U.S. District Judge:**

Plaintiff William J. Webb, Jr., a pretrial detainee at the James T. Vaughn Correctional Center in Smyrna, Delaware, filed this action pursuant to 42 U.S.C. § 1983. (D.I. 1, 11). The Court considers Docket Items 1 and 11 as the operative pleading. Plaintiff appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 6). He has filed a request for counsel and a motion for injunctive relief. (D.I. 7, 8). The Court proceeds to screen the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a).

## BACKGROUND

Plaintiff is a pretrial detainee. Plaintiff was initially housed at Sussex Correctional Institution and, at some point, he was transferred to JTVCC. The Complaint raises a number of claims for acts beginning on June 4, 2019 and "still ongoing" as of August 25, 2020. (D.I. 11 at 7). Plaintiff alleges violations of his right to due process, the Clean Air and Water Act, the Americans with Disabilities Act, and claims brutality and assault, threats of assault, unconstitutional lighting, retaliation, physical and mental abuse, and deliberate indifference. (*Id.*). He seeks compensatory and punitive damages as well as injunctive relief. (*Id.* at 13).

## SCREENING OF COMPLAINT

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary

1

relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013). *See also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94.

A complaint is not automatically frivolous because it fails to state a claim. *See Dooley v. Wetzel*, 957 F.3d. 366, 374 (3d Cir. 2020). "Rather, a claim is frivolous only where it depends 'on an "indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario.'" *Id.*

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§1915 and 1915A, the Court must grant Plaintiff leave to amend his complaint unless

2

amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 574 U.S.10 (2014). A complaint may not dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 11.

A court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780,787 (3d Cir. 2016). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## DISCUSSION

**Eleventh Amendment Immunity**. Three named defendants, the Delaware Department of Correction, Sussex Correctional Institute, and James T. Vaughn

3

Correctional Center, are immune from suit. The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the kind of relief sought. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). SCI and JTVCC fall under the umbrella of the DOC, and the DOC, as an agency of the State of Delaware, is immune from suit. *See Jones v. Sussex Corr. Inst.*, 725 F. App'x 157, 159 (3d Cir. 2017). "Absent a state's consent, the Eleventh Amendment bars a civil rights suit in federal court that names the state as a defendant." *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981). Delaware has not waived its immunity from suit in federal court; although Congress can abrogate a state's sovereign immunity, it did not do so through the enactment of 42 U.S.C. § 1983. *See Jones*, 725 F. App'x at 159-60); *Brooks-McCollum v. Delaware*, 213 F. App'x 92, 94 (3d Cir. 2007).

The DOC, SCI, and JTVCC are immune from suit and will be dismissed.

**Due Process**. Plaintiff alleges that his right to due process was violated when he was written up and did not receive a hearing within seven days, but he does not identify any responsible party. (D.I. 11 at 7). Plaintiff was found guilty of the write-up. He alleges that he received a 15-day sanction in "the hole" without due process. (*Id.* at 7, 9). Plaintiff alleges that Major John Beck "simply denied the appeal." (*Id.* at 9).

"Generally, prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'" *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003-06 (7th Cir. 1999)). For pretrial

4

detainees, "the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974)." *Kanu*, 739 F. App'x at 116. Those protections "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Id.* (citing *Wolff*, 418 U.S. at 563-66); *see also Stevenson v. Carroll*, 495 F.3d 62, 70 (3d Cir. 2007). However, a right to appeal disciplinary convictions is not within the narrow set of due process rights delineated in *Wolff*. *Garfield v. Davis*, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983); *Greer v. DeRobertis*, 568 F. Supp. 1370 (N.D. Ill. 1983).

As pled, it is unclear if Plaintiff was unconstitutionally punished when he was sent to "the hole for 15 days." *See Parkell v. Morgan*, 682 F. App'x 155, 158 (3d Cir. 2017). As noted, Plaintiff does not identify any individual who allegedly violated his constitutional rights when he was punished. With regard to Beck and the denial of Plaintiff's appeal, however, the claim fails as a matter of law.

**Strip Search Video**. Plaintiff alleges that when he was strip searched, Lt. Amos Calloway "sexually" videotaped the search while correctional officers and an inmate were present. (D.I. 11 at 11). When Plaintiff was told the strip search had been videotaped, he reported it to the PREA hotline. (*Id.*). Plaintiff alleges this was covered up by Warden Robert May. (*Id.*).

5

Plaintiff does not allege that the search itself violated his rights but, rather, it is the recording of the search that he finds objectionable. Courts in our Circuit have not found violations of a prisoner's constitutional rights by reason of the video recording of strip searches within a prison. *See Fatir v. Phelps*, 2019 WL 2162720, at *7 (D. Del. May 17, 2019) (finding that the presence of a camera does not render the strip search unconstitutional); *Watley v. Pike Cty.*, 2018 WL 6018903, at *11 (M.D. Pa. Nov. 16, 2018) (finding that video recording of strip search was reasonable because it served legitimate penological needs, such as "ensuring that the search was conducted in a proper manner, deterring against misconduct and false accusations of misconduct, and providing an objective record of the events.").

Indeed, using a camera to record a strip search in a prison does not, by itself, amount to a constitutional violation. *See, e.g., Michenfelder v. Sumner*, 860 F.2d at 330, 333 (9th Cir. 1988) (no constitutional violation when search was conducted in hallway in view of other prisoners on the same tier and indirectly on video camera by opposite sex prison staff); *Daws v. Florence*, 600 F. App'x 26, 27 (2d Cir. 2015) ("defendants showed that their practice of having a supervisory officer present during strip frisks and recording strip frisks via wall-mounted video camera is reasonably related to the legitimate interests in both inmate and staff security at Sullivan."); *Henderson v. Oats*, 2018 WL 2054563, at *2 (W.D. Ky. May 2, 2018) ("Plaintiff's allegation that he was strip searched in a drunk tank with a camera fails to establish a violation of his constitutional rights."); *Bellamy v. City of New York*, 2017 WL 979064, at *3 (S.D.N.Y. Mar. 13, 2017)

("While he does mention that the search was conducted in a room with a security camera, there is no basis to find that the presence of a camera, by itself, was unreasonable. Indeed, the presence of cameras may assist prisoners by ensuring that government officials do not abuse prisoners while conducting searches."); *Sanchez v. Bauer*, 2015 WL 5026195, at *6 (D. Colo. Aug. 26, 2015) (allegation that the plaintiff was "video recorded" while he was strip searched failed to state a Fourth Amendment claim); *Smith v. City of New York*, 2015 WL 3929621, at *2 (S.D.N.Y. June 17, 2015) ("neither the presence of cameras nor the presence of other inmates and employees of a correctional facility makes an otherwise constitutional strip search unconstitutional."); *Peek v. City of New York*, 2014 WL 4160229, at *2 (S.D.N.Y. Aug. 18, 2014) ("Without more, however, the presence of a camera at a strip search does not amount to a constitutional violation.").

By itself, the video recording of the strip search is not a violation of Plaintiff's constitutional rights and fails as a matter of law. The claims will be dismissed.

**Excessive Lighting and Mental Health Care**. Plaintiff alleges that excessive lights bother him, both physically and mentally. (*Id.* at 9). He alleges the lights are on sixteen hours a day and hurt his eyes, cause headaches, cause sleep deprivation, and cause other psychotic episodes. (D.I. 11 at 8). He alleges that Warden May made sure the lights were used to harm him and that he sent an official notice to May and Centurion (the current DOC contract medical provider) both of whom denied Plaintiff adequate mental health care. (*Id.* at 8-9). He further alleges that Nurse Jane Doe saw

7

Plaintiff, lied to cover up the mental abuse caused by the lights, and told Plaintiff he would not receive medical glasses or solar shields to keep the lights from harming him. (*Id.* at 10).

Plaintiff goes on to allege that Connections (the former DOC contract medical provider) and Centurion failed to properly train their staff; that May, Connections, and Centurion were deliberately indifferent to Plaintiff's right to adequate medical and mental health care and violated the Americans with Disabilities Act; and that Connections, Centurion, Kathleen Potter, and Dr. Yunis were deliberately indifferent to Plaintiff's right to adequate mental health care in violation of the Eighth Amendment and the ADA. (*Id.* at 10, 13).

"[B]right, constant illumination that causes 'grave sleeping problems and other mental and psychological problems' can establish an Eighth Amendment deprivation." *Mammana v. Federal Bureau of Prisons*, 934 F.3d 368, 374 (3d Cir. 2019). Plaintiff alleges that the lights were illuminated sixteen hours a day. He does not allege constant illumination. He does not allege anything approaching an "objective deprivation of sufficient seriousness." *See id.* at 373. The allegations do not rise to the level of a constitutional violation.

To the extent Plaintiff alleges deliberate indifference to serious medical and mental health needs and that medical defendants failed to properly train staff, the conclusory allegations are not supported by any facts and fail to state claims of constitutional violations.

8

The foregoing claims will be dismissed for failure to state claims upon which relief may be granted.

**Deficiently Pled**. Many other claims are deficiently pled, are not supported by the facts, or are conclusory. See *Iqbal*, 566 U.S. at 678 (stating that a complaint will not suffice if it "offers [merely] 'labels and conclusions'" or "'naked assertion[s]' devoid of 'further factual enhancement' ") (quoting *Twombly*, 550 U.S. at 555, 557). Merely reciting an element of a cause of action or making a bare conclusory statement is insufficient to state a claim. See *Iqbal*, 566 U.S. at 578.

In certain instances the Complaint does not name the person who allegedly committed the wrongdoing. For example, Plaintiff alleges retaliation when he was transferred to a housing unit with restrictive recreation periods, but does not name the person responsible for the transfer. (D.I. 11 at 7). Plaintiff, a pretrial detainee, alleges he has been treated like a sentenced inmate since November 2019, but does not direct this allegation towards any defendant. (*Id.* at 12).

Plaintiff alleges that JTVCC refuses to transfer him and that he served Warden Robert May with "Legal Notice." (*Id.*). The Delaware Supreme Court has recognized that prison officials have discretion to house inmates at the facilities they choose. *Walls v. Taylor*, 856 A.2d 1067, 2004 WL 906550 (Del. 2004) (table) (citing *Brathwaite v. State*, No. 169, 2003 (Del. Dec. 29, 2003). Furthermore, the United States Supreme Court has held that an inmate has no due process right to be incarcerated in a particular

9

institution whether it be inside the state of conviction, or outside that state. *Olim v. Wakinekona*, 461 U.S. 238, 251 (1983).

Plaintiff alleges that on June 11, 2019, he was threatened by Lt. Matthew Long while Sgt. Hubbs was present and Hubbs failed in this duty to protect Plaintiff from Long's threat to break Plaintiff's jaw. (*Id.* at 7, 12). Plaintiff does not allege Lt. Long did anything more than make a threat. Plaintiff alleges that Corporal Kirk Neal harassed him and intentionally deprived him of recreation.[1] (*Id.* at 9). He alleges that Neal told Lt. Calloway that he was going to harm Plaintiff, and Calloway did nothing. (*Id.* at 9). Allegations that prison personnel have used threatening language and gestures are not cognizable claims under § 1983. *Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979) (defendant laughed at prisoner and threatened to hang him); *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (taunts and threats are not an Eighth Amendment violation); *Prisoners' Legal Ass'n v. Roberson*, 822 F. Supp. 185, 189 (D.N.J. 1993) (verbal harassment does not violate inmate's constitutional rights). Plaintiff's claims of harassment and threatening behavior do not state constitutional claims. To the extent Plaintiff attempts to raise a failure to protect claim, the Complaint does not contain sufficient facts to support the claim.

---

[1] The denial of exercise or recreation can result in a constitutional violation. "[M]eaningful recreation 'is extremely important to the psychological and physical well-being of the inmates.'" *Peterkin v. Jeffes*, 855 F.2d 1021, 1031 (3d Cir. 1988) (quoting *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979)). However, the lack of exercise can only rise to a constitutional level "where movement is denied and muscles are allowed to atrophy, [and] the health of the individual is threatened." *Spain*, 600 F.2d at 199. Plaintiff's single statement that he was deprived of recreation fails to state a claim.

Plaintiff alleges that when he requested an investigation, Long was given a promotion. (*Id.* at 9). This is not a constitutional violation.

Plaintiff alleges that "other write-ups" were done without regard for due process concerning disciplinary hearings and appeals that were denied. (*Id.* at 11). The Complaint provides no facts to support this conclusory claim.

Plaintiff alleges that he has been housed in SHU in violation of his right to be presumed innocent until proven guilty. (*Id.* at 8). Because an inmate does not possess a liberty interest arising from the Due Process Clause in assignment to a particular custody level or security classification or a place of confinement, the claim fails. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (Constitution does not give rise to liberty interest in avoiding transfer to more adverse conditions of confinement.

Plaintiff seems to allege unlawful conditions of confinement in stating "building 18-D is inhumane and is in violation on the Clean Air and Water Act." (*Id.* at 8). The Complaint does not provide facts to support this claim.

Finally, Plaintiff alleges that DOC Commissioner Claire DeMatteis failed in her obligation to properly handle the COVID-19 pandemic when she did not train staff or deep clean DOC facilities and thus placed Plaintiff's life in imminent danger. (*Id.* at 12). There are no facts to support this claim. Plaintiff does not allege he was exposed to COVID-19 or that he has COVID-19 symptoms, or that he was not provided treatment for COVID-19.

Because the foregoing claims do not meet the pleading requirements of *Iqbal* and *Twombly*, the Court will dismiss them pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

**Excessive Force**. Plaintiff has alleged what appear to be cognizable excessive force claims against C/O Kirk Neal and C/O Verde. (*Id.* at 9, 11). He will be allowed to proceed against these defendants.

**Amendment**. As pled, the Complaint fails to state claims upon which relief may be granted and raises claims against three Defendants who are immune from suit. Therefore, I will dismiss all claims, except the excessive force claims against Neal and Verde, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i), (ii), and (iii) and 1915A(b)(1) and (2), and will give Plaintiff leave to amend since it is possible that he may be able to state claims upon amendment.

**Request for Counsel**. Plaintiff's request for counsel will be denied without prejudice to renew. (D.I. 7). Plaintiff requests counsel on the grounds that he has unsuccessfully sought to retain counsel, he is denied psychiatric medication to keep his clinical depression and ADHD under control, counsel is better able to conduct discovery, and counsel will boost the economy in the legal sector.

A *pro se* litigant proceeding in forma pauperis has no constitutional or statutory right to representation by counsel. *See Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). However, representation

by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law. *Tabron*, 6 F.3d at 155.

After passing this threshold inquiry, the Court should consider a number of factors when assessing a request for counsel. Factors to be considered by a court in deciding whether to request a lawyer to represent an indigent plaintiff include: (1) the merits of the plaintiff's claim; (2) the plaintiff's ability to present his or her case considering his or her education, literacy, experience, and the restraints placed upon him or her by incarceration; (3) the complexity of the legal issues; (4) the degree to which factual investigation is required and the plaintiff's ability to pursue such investigation; (5) the plaintiff's capacity to retain counsel on his or her own behalf; and (6) the degree to which the case turns on credibility determinations or expert testimony. *See Montgomery v. Pinchak*, 294 F.3d 492, 498-99 (3d Cir. 2002); *Tabron*, 6 F.3d at 155-56. The list is not exhaustive, nor is any one factor determinative. *Tabron*, 6 F.3d at 157.

This case is in its early stages and no defendant has been served. Most of the claims will be dismissed and Plaintiff has been given leave to amend to cure pleading defects. The excessive force claims do not involve complex legal theories and it remains to be seen if other claims will have arguable merit in fact and law. Upon consideration, I have concluded that counsel is not necessary at this point. Therefore, the Court will deny Plaintiff's request for counsel without prejudice to renew.

13

**Motion for Injunctive Relief.** Plaintiff's motion for injunctive relief will be denied without prejudice. (D.I. 8). Plaintiff asks the Court to order OSHA and the EPA to test the quality of air and water at the prison where Plaintiff is housed. (*Id.* at 3). He also asks the Court to order a deep cleaning of JTVCC to stop the spread of infectious diseases and to enjoin JTVCC from lighting the prison sixteen hours per day. (*Id.*). Finally, Plaintiff asks the Court to "vindicate" his rights and order "4½ hours rec. per day, a tablet with apps and games in his cell, a basketball court and basketball, a hand ball, [and] a table." (*Id.* at 4).

A party seeking a preliminary injunction must show: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). "Preliminary injunctive relief is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'" *Id.* (citations omitted). Because of the intractable problems of prison administration, a request for injunctive relief in the prison context must be viewed with considerable caution. *Abraham v. Danberg*, 322 F. App'x 169, 170 (3d Cir. 2009) (citing *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995)).

Plaintiff has not met his burden for injunctive relief. He has not demonstrated a likelihood of success on the merits or irreparable harm. Nor has he proven that immediate injunctive relief is justified. Therefore, the motion for injunctive relief will be denied without prejudice.

14

## CONCLUSION

For the above reasons, the Court will: (1) deny without prejudice to renew Plaintiff's request for counsel; (2) deny without prejudice Plaintiff's motion for injunctive relief; (3) dismiss Delaware Department of Correction, Sussex Correctional Institution, and James T. Vaughn Correctional Center as they are immune from suit and, with the exception of the excessive force claims against Kirk Neal and C/O Verde, dismiss all defendants and claims as frivolous and/or for failure to state claims upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) and § 1915A(b)(1). Plaintiff will be given leave to file an amended complaint.

An appropriate Order will be entered.